UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TARA J. ROUGHT,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

                Defendant.

Case No. C16-1037-RAJ

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Tara J. Rought seeks review of the denial of her application for Supplemental Security Income (SSI). Ms. Rought contends the ALJ erred in: (1) misevaluating the opinions of several treating and examining doctors; and (2) giving greater weight to the opinions of non-examining doctors than treating and examining opinions. Dkt. 12. Ms. Rought contends these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of her limitations. *Id.* at 15-16. As relief, Ms. Rought requests that this matter be reversed and remanded for payment of benefits or, alternatively, for further administrative proceedings. *Id.* at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

**REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

On July 28, 2009, Ms. Rought applied for benefits, alleging disability as of May 14, 2009. Tr. 20, 140-43, 155. Ms. Rought's applications were denied initially and on reconsideration. Tr. 103. After the ALJ conducted a hearing on January 14, 2016, the ALJ issued a decision finding Ms. Rought not disabled.[2] Tr. 429-55.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Rought has not engaged in substantial gainful activity since July 28, 2009, the application date.

**Step two:** Ms. Rought has the following severe impairments: affective disorder, post-traumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), and a personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity:** Ms. Rought can perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, repetitive tasks. She can concentrate for two hours at a time with usual and customary breaks throughout an eight-hour workday. She can work superficially and occasionally with the general public. She can work in the same room with an unlimited number of coworkers but not in coordination with them; with this limitation, it is expected that the claimant can maintain appropriate behavior in the workplace, and not be a distraction to her co-workers. The claimant can interact superficially with co-workers and can interact occasionally with supervisors and, with this limitation, the claimant can accept criticism and respond appropriately. She can make simple workplace judgments consistent with simple, repetitive work. With these limitations, that she can tolerate the pressures of work and maintain attendance and punctuality.

---

[2] Two prior ALJ decisions were rendered in this case which were reversed and remanded for further proceedings by the district court and the Appeals Council.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

1  **Step four:** Ms. Rought cannot perform past relevant work.

2  **Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Rought can perform, she is not disabled.

Tr. 429-45. Ms. Rought filed a complaint with this Court appealing the ALJ's decision. Dkt. 3.[5]

**DISCUSSION**

**A.     Medical Evidence**

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.*

**1.     Cheryl O. Hart, Psy.D.**

Dr. Hart examined Ms. Rought in 2009. Tr. 339-43. She opined Ms. Rought had "sufficient persistence, pace, and concentration to succeed in a competitive workplace provided that she works in a low-stress, low anxiety workplace doing non-mathematical tasks. She is considered, at a minimum, capable of performing simple, repetitive tasks out of direct contact with the public with minimal to moderate contact with coworkers." Tr. 343.

The ALJ gave "great weight" to Dr. Hart's opinion but failed to either include Dr. Hart's restriction to low-stress jobs in the RFC or provide a specific and legitimate reason for rejecting such limitation. Tr. 440. This was error. Contrary to the Commissioner's argument, the other limitations to simple, repetitive tasks out of direct contact with the public with minimal to moderate contact with coworkers does not adequately account for Dr. Hart's separate limitation to a low-stress or low-anxiety workplace. As indicated in Social Security Ruling 85-15:

---

[5] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day....Any impairment-related limitations created by an individual's response to demands of work... must be reflected in the RFC assessment.

SSR 85-15, *available at* 1985 WL 56857 at *6; *see Sampson v. Colvin*, 2015 WL 5024076 at *3 (W.D. Wash. Aug. 25, 2015) (ALJ erred in failing to address doctor's limitation to "low stress" jobs, RFC limitation to simple, routine jobs did not adequately account for the limitation); *Mostafavinassab v. Colvin*, 2016 WL 4547129 at *9 (W.D. Wash. Sept. 1, 2016). The ALJ erred in failing to address Dr. Hart's low-stress restriction entirely. *See Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (holding that ignoring a physician's opinion entirely constitutes error).

Moreover, the Court cannot conclude this error was harmless. An error is considered harmless if it is "inconsequential to the ultimate non-disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). However, a reviewing court cannot consider an error in failing to discuss specific evidence harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Because Dr. Hart's low-stress restriction was not properly rejected or included in the RFC, and because (as discussed below) this case must be remanded to reevaluate other medical opinions which may result in an altered RFC and hypotheticals to the VE, the Court cannot conclude the error was harmless.

2. **William Chalstrom, Ph.D.**

Dr. Chalstrom performed a psychological evaluation of Ms. Rought in December 2012. Tr. 1344-48. He found Ms. Rought had difficulties with concentration but was capable of

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

understanding, remembering and carrying out short and simple instructions. Tr. 1348. He found she might have some problems dealing with others in a work situation and that she should be able to respond appropriately to changes in a workplace. *Id.*

Ms. Rought contends the ALJ ignored Dr. Chalstrom's limitation to understanding, remembering and carrying out short and simple instructions. DKt. 12 at 7. The Commissioner argues the limitation to simple, repetitive tasks in the RFC sufficiently accounts for Dr. Chalstrom's opinion. Dkt. 13 at 3. The Court agrees with Ms. Rought. The Dictionary of Occupational Titles (DOT) evaluates jobs in various categories including reasoning level. Reasoning Level 1 and Level 2 are defined by the DOT as follows:

> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C.

The limitation to understanding, remembering and carrying out short and simple instructions appears consistent with Level 1 reasoning jobs but does not appear entirely consistent with Level 2 reasoning jobs which require the ability to understand and carry out *detailed* instructions. *Id.* However, courts in this circuit (including several unpublished Ninth Circuit opinions), as well as several other circuit courts, have generally held that a limitation to simple, repetitive tasks is consistent with both reasoning Level 1 and reasoning Level 2 jobs. *See Moore v. Astrue,* 623 F.3d 599, 604 (8th Cir. 2010); *Abrew v. Astrue*, 303 Fed.Appx. 567, 569 (9th Cir. 2008) (unpublished); *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. 2008) (unpublished); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Money v. Barnhart*,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

91 Fed.Appx. 210, 215 (3d Cir. 2004) (unpublished). Thus, the Court agrees that, without more, it is not clear that the ALJ's limitation to simple, repetitive tasks necessarily accounts for the limitation to understanding, remembering and carrying out short, simple instructions. Moreover, in response to the hypothetical limiting Ms. Rought to simple, repetitive tasks, the vocational expert identified two jobs which require Level 2 reasoning and only one job requiring Level 1 reasoning. Tr. 444. The Court cannot confidently conclude that this error harmless because this case must be remanded to reevaluate other medical opinions, which may result in an altered RFC and hypotheticals to the VE. Accordingly, on remand, the ALJ should address and evaluate Dr. Chalstrom's opinion that Ms. Rought was limited to understanding, remembering and carrying out short and simple instructions.

### 3. Karin Barkin, M.D. and Laura Nastri, M.A.

In March 2010 Ms. Nastri completed a mental medical source statement which was subsequently also signed by Dr. Barkin. Tr. 1051-53. Dr. Barkin and Ms. Nastri opined Ms. Rought was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and that she would miss four or more days of work per month due to her impairments. *Id.* They explained that Ms. Rought was,

> unable to maintain sufficient stability at this time to maintain a 40 hour per week schedule. [She] would like to work part time, but experiences significant mood instability and acting out behaviors, PTSD S/S exacerbated by stress. Periodic SI w/o plan or intent. [She] is receiving long term mental health treatment for severe and persistent mental illness.

Tr. 1053.

The ALJ rejected Dr. Barkin and Ms. Nastri's opinions on the grounds they were inconsistent with the treatment notes. Tr. 441-42. Specifically, the ALJ found:

> The treatment notes largely contain normal mental status evaluations showing the claimant to have intact concentration and memory, good

> attention skills, and a pleasant demeanor with evaluators. Though Ms. Rought has endorsed a history of violent behavior, she notes that this is primarily in the context of her romantic relationships, which she has undergone anger management for. Furthermore, as discussed in detail above, the claimant's complaints are primarily due to situational stressors, and not due to her impairments.

*Id.* These were not specific and legitimate reasons to discount Dr. Barkin's and Ms. Nastri's opinions. Dr. Barkin and Ms. Nastri opined Ms. Rought would be unable to maintain a full time job because of her significant mood instability and acting out behaviors and PTSD with signs and symptoms exacerbated by stress. Tr. 1053. In other words, Dr. Barkin and Ms. Nastri did not opine Ms. Rought could not work due to cognitive deficits such as memory or concentration problems, or difficulty. *Id.* Instead, they found Ms. Rought's work limitations flowed from symptoms, namely mood instability and acting out behavior, caused by her mental disorders— PTSD, major depressive disorder and borderline personality disorder.[6] Tr. 384, 1053, 1347.

The treatment notes also indicate that while at times Ms. Rought exhibited a pleasant demeanor, she was also frequently observed as nervous and anxious, crying or becoming tearful, was noted to be involved in chaotic relationships, appeared irritable, had labile mood and affect, made crisis visits to the mental health clinic reporting suicidal ideation, exhibited flat or variable affect, dysphoria, blunted affect, depressed mood and restricted affect, frequently appeared at medical appointments in pajamas, exhibited frustration and yelled at her children during medical appointments, up and down mood, and frequently reported feeling overwhelmed and overly stressed by her children and household duties. Tr. 254, 256, 258, 290, 291, 294, 295, 296, 323, 367, 369, 372, 373, 374, 375, 377, 378, 379, 380, 384, 393, 1147. These findings tend to support

---

[6] The fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) defines borderline personality disorder as "[a] pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity, beginning by early adulthood and present in a variety of contexts[.]" *Diagnostic and Statistical Manual of Mental Disorders* 663 (5th ed. 2013).

the limitations and explanation contained in the mental medical source statement.  Accordingly, the Court concludes the ALJ erred in discounting this opinion as inconsistent with the MSE findings of intact concentration and memory, good attention skills, and a pleasant demeanor.

Moreover, it is unclear how the ALJ's finding that Ms. Rought's history of violent behavior is primarily in the context of romantic relationships undermines Dr. Barkin and Ms. Nastri's opinions.  Dr. Barkin and Ms. Nastri indicated that Ms. Rought experienced significant mood instability and "acting out" behavior.  Tr. 1053.  While these symptoms and behaviors are evidenced in part by a history of violence in the context of Ms. Rought's romantic relationships, there is also evidence in the record of mood instability and "acting out" behavior in other contexts.  For example, the record shows that Ms. Rought exhibited angry outbursts with her children in front of her providers, she was fired from a daycare job for cursing at a child, she was banned from the school district for yelling at the principal while volunteering at her children's school, she was involved with Child Protective Services (CPS) three times, and she walked out of her certified nursing assistant (CAN) exam due to frustration and was noted to have exhibited unprofessional behavior.  Tr. 58-59, 488-89, 468-69, 487-89, 1147.  In light of this evidence, the ALJ's finding that Ms. Rought's history of violent behavior was primarily in the context of romantic relationships does not substantially undermine Dr. Barkin and Ms. Nastri's opinions.

The ALJ also discounts Dr. Barkin and Ms. Nastri's opinions because Ms. Rought's "complaints are primarily due to situational stressors, and not due to her impairments." Tr. 442. However, in making this finding the ALJ seeks to supplant his own lay opinion for the medical opinion of Dr. Barkin and Ms. Nastri.  "An ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a physician's.  *Herwick v. Astrue*, No. C12-489-RAJ-BAT, 2012 WL 5947624, at *2 (W.D. Wash. Nov. 7, 2012), *report and recommendation*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

*adopted*, No. C12-489RAJ, 2012 WL 5947342 (W.D. Wash. Nov. 28, 2012)*; see Tackett v. Apfel,* 180 F.3d 1094, 1102–03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony about a road trip; there was no medical evidence to support the ALJ's determination); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record.). Dr. Barkin and Ms. Nastri opined that Ms. Rought's symptoms and complaints derived from her mental disorders, not from situational factors, and that her underlying mental health symptoms were exacerbated by stress. Tr. 1053. In order to discount a doctor's opinion, "[t]he ALJ must do more than offer his conclusions […] [r]ather, "he must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998). Here, the ALJ failed to satisfy this requirement. Furthermore, the fact that Ms. Rought experienced increased mood lability and symptomatology when faced with increased stressors is entirely consistent with Dr. Barkin and Ms. Nastri's opinions that Ms. Rought's existing mental health symptoms, namely significant mood instability, were exacerbated by stress.

The ALJ also discounts Dr. Barkin and Ms. Nastri's opinions as inconsistent with Ms. Rought's activities. Tr. 442. Specifically, the ALJ finds the opinions inconsistent with Ms. Rought's ability "to care for three young children, engage in [Division of Vocational Rehab (DVR)] services, volunteer, care for others such as her mother and neighbor, and care for her own home." *Id.* However, none of these activities demonstrate Ms. Rought can maintain sufficient mental stability to maintain a 40 hour per week schedule. Although Ms. Rought was responsible for caring for all three of her children at times, she frequently reported to her providers that she felt overwhelmed by this responsibility. Moreover, the record shows evidence

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

of CPS involvement on three occasions. Tr. 488-89. One of Ms. Rought's children was sent to live with his father in October 2012 and her other two children were removed by CPS in October 2014. Tr. 462-66. While one of Ms. Rought's children was returned to her in late 2015 upon her completion of parenting class and compliance with court-mandated requirements, her other child was also sent to live with his father. *Id.* With respect to DVR services, the record shows Ms. Rought engaged in this on various occasions. Tr. 487. However, as Ms. Rought points out, DVR is a resource which provides supportive counseling and assistance to individuals with disabilities in overcoming various barriers to employment. The fact that Ms. Rought engaged in DVR in an attempt to work does not demonstrate the ability to work full-time in a normal work setting. *See, e.g., Clark v. Colvin*, 2016 WL 6958136 (W.D. Wash. Nov. 28, 2016) ("[T]he ability to engage in DVR services and attend a job interview, does not alone evince an ability to obtain or maintain gainful employment.").

With respect to volunteering, Ms. Rought did report volunteering at the food bank on a part-time basis but also reported quitting at one point due to anxiety and discomfort working around people. Tr. 57. Ms. Rought also reported volunteering at her children's school for a period but testified she was subsequently banned from the school for yelling at the principal. Tr. 487. Moreover, given that mental health symptoms wax and wane, Ms. Rought's ability to occasionally care for her mother or a neighbor does not substantially undermine Dr. Barkin and Ms. Nastri's opinions that she would be unable to maintain sufficient stability to work full-time. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (finding it is error to reject a claimant's testimony merely because mental health symptoms wax and wane in the course of treatment). Finally, Ms. Rought's ability to perform chores in her own home on her own schedule when she felt mentally capable of doing so does not substantially undermine Dr. Barkin

and Ms. Nastri's opinions that due to her mood instability and acting out behavior she was unable to maintain sufficient stability to maintain a 40 hour per week schedule. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, […] and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

### 4. Norma Brown, Ph.D.

Dr. Brown evaluated Ms. Rought in July 2009. Tr. 1054-59. Dr. Brown opined Ms. Rought was moderately limited in her ability to understand, remember, and follow complex (more than two step instructions), markedly limited in her ability to learn new tasks, exercise judgment and make decisions, interact appropriately in public contacts and the ability to care for herself including personal hygiene and appearance. *Id.* Dr. Brown found Ms. Rought severely limited in her ability to relate appropriately with co-workers and supervisors, respond appropriately and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. *Id.*

The ALJ discounted Dr. Brown's opinion on the grounds that she "appears" to base her assessment of marked and severe impairments largely on Ms. Rought's "presentation during her evaluation, at which time Ms. Rought was sobbing and overwhelmed, however, subsequent treatment notes do not document this degree of impairment." Tr. 441. However, while Ms. Rought did not present sobbing and overwhelmed at every appointment, there is significant evidence in the record of Ms. Rought's mood instability and there is evidence she was reported on numerous occasions to be crying or tearful at medical appointments. Tr. 245-99, 367-95. As the Ninth Circuit has reinforced, with respect to mental health issues, "[c]ycles of improvement

and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017; *see, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Accordingly, substantial evidence does not support the ALJ's reasoning that Ms. Rought's presentation on this occasion was inconsistent with the record as a whole.

The ALJ also discounts Dr. Brown's opinion as inconsistent with her ability to work on and off, go to school, and her statement she is able to work and is a good multi-tasker. Tr. 441. Although Ms. Rought told a provider on one occasion that she thought she could "probably" work, she indicated on other occasions that she did not believe she was able to work due to her mood instability. Moreover, in light of the record as a whole, which shows Ms. Rought has had significant difficulty sustaining employment, the Court finds the one statement that she could "probably" work, with no indication of whether she meant she believed she could work full-time or part-time, is not a sufficient basis on its own to discount Dr. Brown's opinion which is based on a full psychological evaluation and review of records.

Moreover, Ms. Rought's ability to work for very short periods of time does not substantially undermine Dr. Brown's opinions. "In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.'" *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 833). "Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent

with disability." *Lester*, 81 F.3d at 833; *see Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924–25 (9th Cir. 2002) ("[T]he SSA's regulations provide for a 'trial work period' in which a claimant may test [his] ability to work and still be considered disabled.' ") (citing 20 C.F.R. § 404.1592). Here, although there is evidence Ms. Rought was able to work in some positions for a short period of time, i.e. as a Salvation Army bell ringer (for one month) this does not substantially undermine Dr. Brown's opinions that she had marked and severe limitations in her ability to function in the work setting as these short-lived jobs do not demonstrate an ability to work on a sustained basis. Moreover, there is also evidence that Ms. Rought was either terminated from or quit several of these jobs because of her symptoms. *See* Tr. 58-59 (fired from a daycare job for cursing at a child), 471-72 (quit Good Will training because she found it too stressful), 475 (terminated from job housecleaning due to reports of crying on the job). Similarly, although the ALJ discounts Dr. Brown's opinion because Ms. Rought was able to go to school, the record shows Ms. Rought was terminated from her CNA program for unprofessional behavior and walking out of class when she became frustrated with an exam. Tr. 66-67. Accordingly, substantial evidence does not support these reasons for discounting Dr. Brown's opinions.

The ALJ also cites the same activities discussed above with respect to Dr. Barkin's opinions as a basis for discounting Dr. Brown's opinions. Tr. 441. However, for the same reasons discussed above with respect to Dr. Barkin's opinions, these activities also do not substantially undermine Dr. Brown's opinions. In sum, the ALJ erred in discounting Dr. Brown's opinions. This error was harmful because the ALJ neither properly rejected nor included all of Dr. Brown's limitations in the RFC or in the hypothetical to the vocational expert.

**5.     Daniel Neims, Psy.D.**

Dr. Neims evaluated Ms. Rought in May 2011 and in May 2012. Tr. 1069-80, 1296-1300. In May 2011 Dr. Neims diagnosed Ms. Rought with anxiety disorder NOS, major depressive episode, recurrent, in partial remission by Hx, R/O ADHD adult residual, borderline personality disorder with avoidant and dependent traits. Tr. 1072. Dr. Neims indicated that Ms. Rought exhibited symptoms of identity instability (noting patterns of borderline, avoidant, and dependent traits evidenced with historical stimulus seeing and history of negative relations with others), anxiety (noting anxious with low frustration tolerance, stability seems largely dependent on status of close relations and environmental factors) and mistrust (noting history of betrayal and abandonment leave claimant wary and guarded). *Id.* Dr. Neims opined that these symptoms would markedly impair Ms. Rought's ability to engage in work activities. *Id.* Dr. Neims opined that Ms. Rought was moderately limited in her ability to learn new tasks, perform routine tasks without undue supervision, be aware of normal hazards and take appropriate precautions. *Id.* He found her markedly limited in her ability to communicate and perform effectively in a work setting with public contact or with limited public contact, and to maintain appropriate behavior in a work setting. Tr. 1073. Dr. Neims opined that, due to these limitations, Ms. Rought was "disabled from SGA for the foreseeable 12 months or longer." *Id.* Dr. Neims assessed the same limitations in 2012 except he found Ms. Rought severely impaired in her ability to communicate and perform effectively in a work setting with public contact. Tr. 1293.

The ALJ discounted Dr. Neims' May 2011 opinion that Ms. Rought is "disabled from SGA for the foreseeable 12 months or longer" as conclusory and as an issue reserved to the Commissioner. Tr. 442. Although an ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, ... he cannot reject them without presenting clear and convincing reasons for doing so." *Matthews v. Shalala*, 10 F.3d 678, 680

(9th Cir. 1993); *see* SSR 95-5p ("the regulations provide that the final responsibility for deciding issues such as [whether an individual is 'disabled'] is reserved to the Commissioner."). Here, the ALJ erred in rejecting Dr. Neims' opinion as conclusory. Dr. Neims assessed various marked and severe limitations in specific areas, which the ALJ failed to address entirely and which also tend to support his opinion that Ms. Rought was unable to work. This was error. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); 20 C.F.R. § 404.1527(c) (Regardless of its source, we will evaluate every medical opinion we receive.).

The ALJ also points out that Dr. Neims indicated Ms. Rought stated she felt she was making gains in therapy. Tr. 442. However, it is unclear why the fact that Ms. Rought reported some improvement with therapy undermines Dr. Neims' opinion as there is no indication she improved to the point of nondisability. The ALJ also finds Dr. Neims' opinion that Ms. Rought is disabled unsupported by the record and treatment notes which show she primarily complained of situational stressors. Tr. 442. However, the ALJ again seeks to supplant his own lay opinion for Dr. Neims' medical opinion. *See, e.g., Tackett*, 180 F.3d at 1102–03. Dr. Neims' opinion is based on a mental status examination as well as a review of the medical records. Dr. Neims opined that Ms. Rought's symptoms and complaints derived from her mental disorders, not from situational factors, and the ALJ's lay opinion to the contrary is not sufficient grounds to discount Dr. Neims' opinion. The ALJ also noted that Ms. Rought was able to look for work, engage in volunteer opportunities, care for her mother, drive a car, and babysit other people's children. Tr. 442. However, the ALJ fails to explain how these activities necessarily undermine Dr. Neims' opinions and, for the same reasons discussed above with respect to Dr. Barkin's opinion, the activities cited by the ALJ do not substantially undermine Dr. Neims' opinions. Nor are the

additional activities cited by the ALJ, i.e., the ability to drive a car or occasionally babysit a friend's children, inconsistent with Dr. Neims' opinions as to the limiting effects of Ms. Rought's mental health symptoms.

The ALJ also discounted Dr. Neims' 2012 opinion noting that Dr. Neims did not review any records prior to rendering his opinion and also opined that vocational training would minimize or eliminate barriers to employment. Tr. 442. However, the ALJ fails to explain how these factors undermine Dr. Neims' opinions. Moreover, Dr. Neims did review records prior to rendering his May 2011 opinion which assessed many of the same limitations. Neither of these reasons constitutes a specific and legitimate reason to discount Dr. Neims' opinions. The ALJ also discounts Dr. Neims' opinion as unsupported by the record and treatment notes which, according to the ALJ, show she primarily complained of situational stressors and despite those stressors was able to look for work, attend appointments, and babysit three other children on occasion. Tr. 442. For the same reasons discussed above, these are not sufficient reasons to discount Dr. Neims' opinions that, due to her mental impairments, she was moderately, markedly and severely limited in various cognitive and social areas affecting her ability to function in a work setting.

In sum, the ALJ erred in discounting Dr. Neims' opinions. This error was harmful because the ALJ neither properly rejected nor included all of Dr. Neims' limitations in the RFC or in the hypothetical to the vocational expert.

**6.     Nonexamining Doctors**

Ms. Rought contends the ALJ erred in giving greater weight to the opinions of nonexamining doctors than to her treating and examining doctors. *See Garrison*, 759 F.3d at 1012 (As a general rule, more weight should be given to the opinion of a treating source than to a

non-treating source; while the opinion of a treating physician is entitled to greater weight than an examining physician, the opinion of an examining physician is entitled to greater weight than a non-examining physician.). Because the Court agrees the ALJ erred in evaluating the opinions of the treating and examining doctors, in reevaluating those opinions on remand, to the extent necessary the ALJ should also reevaluate and reweigh the opinions of the nonexamining doctors

**B.     Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, the Court finds that not all essential factual issues have been resolved. Specifically, there is conflicting medical evidence in the record and the ALJ failed to address portions of several medical opinions as noted above. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Hart, Dr. Chalstrom, Dr. Brown, Dr. Neims, and Dr. Barkin and Ms. Nastri, to the extent provided above. To the extent necessary the ALJ should also reevaluate and reweigh the opinions of the nonexamining doctors, reassess and re-determine the RFC, and proceed with steps four and five of the sequential evaluation process.

DATED this 25th day of October, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge